Robert EVANS, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 05–88–00105–CR.

Court of Appeals of Texas, Dallas.

March 30, 1989.

Michael D. Curran, McKinney, for appellant.

Ronald K. Morgan, Allen, for appellee.

Before HOWELL, LAGARDE and WHITTINGTON, JJ.

LAGARDE, Justice.

Robert Evans, Jr. (Evans), appeals his conviction by a jury for aggravated sexual assault of a child. The jury assessed punishment at confinement for twenty years in the Texas Department of Corrections. In two points of error, Evans asserts that: (1) the evidence was insufficient to support a conviction in that the State failed to provide any evidence that the incident which was alleged to have occurred on or about January 15, 1987, actually occurred within the statute of limitations and anterior to the presentment of the indictment; and (2) the conviction is void since the special prosecutor failed to execute an oath as required by article 2.07 of the Texas Code of Criminal Procedure. We disagree with both points of error; consequently, we affirm.

The facts in this case show that the thirteen-year-old complainant was Evans' stepdaughter. On or about January 15, 1987, Evans approached the complainant while his wife, the child's biological mother, was not at home. Evans took off the child's pants and touched her vaginal area with his penis. Several incidents of this nature occurred on or around January 15, 1987. In fact, repeated incidents of this type had occurred over the six-year period that Evans had been married to the complainant's mother.

On some occasions, Evans would make contact between his mouth and the child's vaginal area, and, on other occasions, he would make contact between his penis and the child's vaginal area or stomach. On at least some of these occasions, he would ejaculate on her stomach or vaginal area. To keep the child from revealing these incidents, Evans told the child that he would hurt her mother "real bad" if she told anyone.

Eventually, the complainant slipped a note into her mother's purse and alerted her mother to the sexual abuse that was taking place. The police were contacted, and, subsequently, on October 8, 1987, a grand jury returned a true bill of indictment charging Evans with aggravated sexual assault of a child. On November 30, 1987, the trial court entered an Order Disqualifying Counsel and Appointing Special Prosecutor. The trial commenced on January 20, 1988.

For a clear understanding of what Evans alleges in his first point of error, we must first set out the applicable law. The Court of Criminal Appeals has held that the State is not bound by the date on or about which the offense is alleged to have been committed, and a conviction may be had upon proof that the offense was committed at any time prior to the return of the indictment and within the period of limitation. *Swabado v. State*, 597 S.W.2d 361, 363 (Tex.Crim.App.1980); TEX.CODE CRIM. PROC.ANN. art. 21.02(6).

In a two-pronged attack, Evans first claims that the evidence was insufficient to establish the date of the offense alleged in the indictment. Second, Evans claims that the evidence actually showed that the offense was committed approximately eight years prior to the return of the indictment, and, as a result, the offense was outside the period of limitation.

■ In relation to the first prong of Evans' attack, we find that the evidence was sufficient to establish the date of "on or about January 15, 1987." The thirteen-year-old complainant testified in response to the prosecutor's questioning as follows:

Q Okay. ——, I want you to think back now to about the 15th. On or about, okay? The 15th day of January, 1987. Okay?

A Yes.

Q Where were you living at that time?

A On 18th Street.

Q Is that in Plano?

A Yes.

Q Is that in Collin County?

A Yes.

Q And Collin County is in the State of Texas?

A Yes.

Q I'm sorry. I have to ask a couple of questions that might seem strange.

Okay. On or about that day, did your stepfather, Robert Evans, Jr., make physical contact with you?

A Yes.

Q Where were you? At home?

A Yes.

Q Okay. Was your mother at home at the time?

A No.

Q Where in the house did this happen?

A Sometimes in the living or in the bedroom.

[Objection Interposed]

Q (By Mr. Morgan) All right. First of all—I'm sorry, _____. Let me ask you a couple of questions real quick. You're thirteen years old; is that right?

A (By the witness) Yes.

\* \* \* \* \* \*

Q Okay. Did Robert Evans ever contact you, make physical contact with you when you—on or about that day when you were in your bedroom?

A Yes?

Q Okay. And how did this happen? What happened? Let me ask you: was it at night?

A Sometimes.

Q Can you think of one time when it was at night around that date?

A Does it have to be in that house—Oh, well, no.

Q Okay. How about in the daytime?

A Yes.

Q Did you have your clothes on?

A I did. He would take them off me.

Q Okay. You originally had your clothes on?

A Yes.

Q Okay. And did he make you take them off?

A He would take them off me.

Q He took them off.

\* \* \* \* \* \*

Q (By Mr. Morgan) Again, we don't have to talk exactly on the 15th of January. Do you understand that?

A (By the witness) Yes.

Q We have to talk on or about that date. All right. So that gives us some range. All right?

A Yes.

Q Okay. I want you to give me a particular incident that occurred. Tell me where it occurred, that you can think of in your mind, where did it occur?

A In the living room.

Q Of your house in Plano?

A Yes.

Q Did it occur in the daytime or at nighttime?

A At night.

Q Okay. Did you (sic) stepfather approach you?

A Yes.

Q Did he put you on the floor?

A We were—That's where I was.

Q Okay. Why were you there?

A Because we had just moved into that house and it—that's where we slept.

Q Hadn't gotten the furniture over yet?

A Yeah.

\* \* \* \* \* \*

Q Okay. At this particular time that you're talking about, did your stepfather make contact between your female sexual organ and his male sexual organ?

A Yes.

\* \* \* \* \* \*

Q When this happened, you were less than fourteen years old; is that correct?

A Yes.

Q Had this type of contact happened before this date?

A Yes.

Q Okay. When did it start happening, that you can recall?

A When I was about five or six.

Q What would happen—Well, let me ask this: how often would this type of contact happen?

A   Sometimes twice in a day and sometimes twice a week.

Q   Over this six year period?

A   Yes.

Q   Was your mother home whenever this happened?

A   No.

Q   Now, then, were there occasions when—when the defendant—when your stepfather would make contact between his mouth and your female sexual organ?

A   Yes.

Q   Did that ever happen—and I'm talking about a week or so here, or even more, around the 15th of January, 1987?

A   Yes.

Q   On more than one occasion?

A   Yes.

Q   Is it your testimony that some type of contact, either between his mouth or his male organ and your female organ, occurred at least a couple of times a week over six years?

A   Could you say that again?

Q   Yeah. Was there contact between the stepfather, your stepfather's mouth or his male organ and your female organ, at least a couple of times a week over a six year period?

A   Yes.

Based on this testimony, we hold that, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found, beyond a reasonable doubt, that the offense occurred on or about January 15, 1987. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Girard v. State*, 631 S.W.2d 162, 163 (Tex.Crim.App. 1982). Additionally, while Evans claims that there are some conflicting statements in the testimony, we note that the credibility of a witness is for the trier of fact to determine. *Coe v. State*, 683 S.W.2d 431, 438 (Tex.Crim.App.1985).

As for the second prong of Evans' first point of error, we do not need to address whether an offense that occurred eight years prior to the indictment would be within the period of limitation since we have already found that the evidence was sufficient to show that the offense about

which the complainant testified occurred on or about January 15, 1987. Neither party questions the fact that a date on or about January 15, 1987, would have been prior to the return of the indictment and within the period of limitation. Thus, the prosecution of this offense was not barred, so we overrule Evans' first point of error.

In his second point of error, Evans claims that his conviction is void since the special prosecutor failed to execute an oath as required by article 2.07(c) of the Texas Code of Criminal Procedure. We disagree. Article 2.07(c) states:

If the appointed attorney is not an attorney for the state, he is qualified to perform the duties of the office for the period of absence or disqualification of the attorney for the state on filing an oath with the clerk of the court. He shall receive compensation in the same amount and manner as an attorney appointed to represent an indigent person.

Despite the fact that this rule directs the State's attorney *pro tem* to take an oath, we cannot determine, in this instance, if such an oath was taken.

■ Unless there is something in the appellate record to show that the State's attorney *pro tem* was not duly and legally appointed, we must presume that he was duly and legally appointed and that he rightfully exercised the office. *Eppes v. State*, 10 Tex. 474, 475 (1853), *op. on reh'g*, 10 Tex. 476 (1853). Here, Evans complains that the transcript of the case at bar does not contain an oath signed by the special prosecutor. However, Evans fails to state that his Designation of Transcript on Appeal does not contain a specific request for a true and correct copy of such an oath, and article 2.07 does not require that the trial court or the State make such an oath part of the appellate record. This Court will not accept as fact any allegations not supported by the record. *See Reyes v. State*, 647 S.W.2d 255, 256 (Tex.Crim.App. 1983). Since there is nothing in the appellate record to show that the State's attorney *pro tem* was not legally and duly appointed, we must presume that he was. Consequently, we overrule Evans' second

point of error and affirm the trial court's judgment.