**Affirmed as Modified; and Opinion Filed June 17, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-14-00274-CR
No. 05-14-00275-CR

**MICHAEL WAYNE JACKSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 292nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1057228-V**

## MEMORANDUM OPINION

Before Justices Lang, Stoddart, and Schenck
Opinion by Justice Lang

Michael Wayne Jackson appeals two trial court judgments. The first revoked his community supervision and adjudicated his guilt for aggravated robbery with a deadly weapon.[1] The second conviction was for a subsequent offense of aggravated sexual assault.[2] The trial court sentenced Jackson to sixty years' imprisonment in each case. Jackson raises three issues on appeal: (1) the trial court abused its discretion in denying Jackson's motion to suppress; (2) the trial court abused its discretion in granting the State's motion to adjudicate guilt; and (3) the trial court denied Jackson his right to a trial by jury. For the reasons below, we decide against

---

[1] Cause no. 05-14-00274-CR.

[2] Cause no. 05-14-00275-CR.

Jackson on all issues.  We modify and affirm as modified the judgment in cause no. 05-14-00274-CR.  *See* TEX. R. APP. P. 43.2(b).  We affirm the judgment in cause no. 05-14-00275-CR.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In May 2011, pursuant to a plea bargain agreement, Jackson pleaded guilty to aggravated robbery with a deadly weapon.  *See* TEX. PEN. CODE ANN.  § 29.03(a)(2) (West 2011).  The trial court deferred adjudicating guilt, placed Jackson on ten years' community supervision, and assessed a fine of $3,000.  On March 19, 2013, Jackson was indicted for aggravated sexual assault with a deadly weapon.  *See id.* § 22.021(a).  The State moved to adjudicate guilt on the prior aggravated robbery with a deadly weapon charge, alleging eighteen grounds for violation of Jackson's probation.  The State's motion to adjudicate guilt included, among other violations, the 2013 aggravated sexual assault charge.

Both, the State's motion to adjudicate guilt and the later charge of aggravated sexual assault, were adjudicated by the trial court.  Jackson initially asserted his right to a trial by jury in the aggravated sexual assault case.  The trial court elected to hear the State's motion to adjudicate guilt first.  According to the record, Jackson chose to waive his right to a jury trial on the aggravated sexual assault charge and to proceed with a combined trial by the court as to both the aggravated sexual assault charge and the State's motion.

The trial court found true the allegations in the State's motion to adjudicate guilt and found Jackson guilty of aggravated sexual assault with a deadly weapon.  Jackson was sentenced to sixty years' confinement in each case, the sentences to run consecutively.  Jackson timely perfected his appeal.

## II.  MOTION TO SUPPRESS

In his first issue, Jackson contends the trial court abused its discretion in denying his motion to suppress certain cell phone records and in "thereafter allow[ing] unauthenticated

evidence at [the] revocation hearing and/or trial before the court." The State responds that the cell phone records were properly authenticated by circumstantial evidence.

### A. Standard of Review

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Butler v. State*, No. PD-0456-14, 2015 WL 1816933, at *3 (Tex. Crim. App. Apr. 22, 2015); *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). "The trial judge does not abuse his or her discretion in admitting evidence where he or she reasonably believes that a reasonable juror could find that the evidence has been authenticated or identified." *Druery v. State*, 225 S.W.3d 491, 502 (Tex. Crim. App. 2007).

"In review of a trial court's ruling on a motion to suppress, an appellate court must apply a standard of abuse of discretion and overturn the trial court's ruling only if it is outside the zone of reasonable disagreement." *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). We apply a bifurcated standard of review, "giving almost total deference to a trial court's determination of historic facts and mixed questions of law and fact that rely upon the credibility of a witness, but applying a *de novo* standard of review to pure questions of law and mixed questions that do not depend on credibility determinations." *Id.* at 922–23.

### B. Applicable Law

Authentication is a "'condition precedent' to admissibility of evidence that requires the proponent to make a threshold showing that would be 'sufficient to support a finding that the matter in question is what its proponent claims.'" *Tienda*, 358 S.W.3d at 638. (quoting TEX. R. EVID. 901(a)). Rule 901 "does not erect a particularly high hurdle," and "the proponent of evidence does not need to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *Campbell v. State*, 382 S.W.3d 545, 549 (Tex. App.—Austin 2012, no pet.) (internal quotations omitted).

–3–

"Evidence may be authenticated in a number of ways, including by direct testimony from a witness with personal knowledge, by comparison with other authenticated evidence, or by circumstantial evidence." *Tienda*, 358 S.W.3d at 638 (citing TEX. R. EVID. 901(b)(1), (3)–(4)). "[E]vidence that merely shows the association of a phone number with a purported sender—alone—might be too tenuous [to authenticate a text message]." *Butler*, 2015 WL 1816933, at *4. "In cases where a sponsoring witness may testify to an association between a cell-phone number and a purported author [of a text message], other evidence may be available that might bridge the logical gap and permit a proper inference that the purported author sent the message." *Id.* at *5. Other evidence may include for example, the message's content or substance, "which considered in conjunction with other circumstances support a conclusion that a message indeed emanated from the purported author." *Id.* "[A]s with the authentication of any kind of proffered evidence, the best or most appropriate method for authenticating electronic evidence will depend upon the nature of the evidence and the circumstances of the particular case." *Tienda*, 358 S.W.3d at 639.

## C. Application of the Law to the Facts

Jackson contends the trial court abused its discretion in admitting the cell phone records because the records were not properly authenticated.[3] The State responds that the cell phone records "were properly authenticated by circumstantial evidence and properly admitted by the trial court."

---

[3] Jackson also contends that admitting the cell phone records "violated Texas Rule of Evidence 107, the rule of optional completeness." In his brief, Jackson does not provide any legal analysis or argument supporting this contention. *See* TEX. R. APP. P. 38.1; *Davey v. Shaw*, 225 S.W.3d 843, 853 (Tex. App.—Dallas 2007, no pet.). However, the issue was not preserved in the trial court. *See* TEX. R. APP. P. 33.1(a); *Ford v. State*, 305 S.W.3d 530, 533–34 (Tex. Crim. App. 2009). The record shows that the trial court did not deny Jackson the opportunity to inquire into or introduce any portion of the cell phone records. Jackson did not attempt to introduce any portion of the cell phone records. Rather, he attempted to exclude the cell phone records based on Rule 107. Rule 107 is not a rule of exclusion; it is a rule of admissibility. *See Lomax v. State*, 16 S.W.3d 448, 450 (Tex. App.—Waco 2000, no pet.). To preserve his argument as to Rule 107, Jackson must have offered the complete cell phone records or his own edited portion. *See id.*; *Jones v. Colley*, 820 S.W.2d 863, 866 (Tex. App.—Texarkana 1991, writ denied); *Young v. State*, 820 S.W.2d 180, 191 (Tex. App.—Dallas 1991, pet. ref'd).

The Court of Criminal Appeals recently held that cell phone records had been properly authenticated through circumstantial evidence. *See Butler v. State*, 2015 WL 1816933, at *1–8. In *Butler*, the Court reasoned that

> a rational jury could conclude that [the witness] recognized the texts to be coming from [the defendant] on this occasion because (1) [the defendant] had called [the witness] from that number on past occasions; (2) the content and context of the text messages convinced [the witness] that the messages from that same phone number during the course of that very text message exchange; and (3) [the defendant] actually called [the witness] from that same phone number during the course of that very text message exchange.

*See id.* at *5.

In this case, Sally McAllister, who knew Jackson from school and had reconnected with him on Facebook, testified that the number in question belonged to Jackson. *See id.* at *4–5. She recalled that she had given Jackson her phone number over Facebook, and he texted her from the cell phone number in question. She remembered the text message exchanges between her phone number and the number in question, and she testified that she was communicating with Jackson. *See id.* McAllister stated that she and Jackson were "flirting" in the text messages and that she and Jackson exchanged pictures of each other. *See id.* at *5–6. McAllister identified the following as one of her text message conversations with Jackson:

> McAllister:  You know I have been rackin my mind. I can remember 2 Michael Jackson's from school.  But I can't place you.  What made you hit me yesterday on FB [Facebook]?
>
> Jackson:  Y u hit me back?
>
> McAllister:  Lmao [laughing my ass off]. Mmmmm. I hit u back cuz that was your second attempt and I was curious. Then after we began talkin I was feelin u. Curtis? Bright dude.
>
> Jackson:  Curiosity killed the cat
>
> McAllister:  Yup!!!!
>
> Jackson:  Yea? Yea mixed dude

McAllister: Yea. I remember him. He always wore a [hat].

McAllister testified that this conversation took place shortly after she communicated with Jackson on Facebook and that she mentioned "Curtis," a person both she and Jackson knew in school, to "figure out which Michael Jackson [he] was." *See id.* at *6.

In addition to McAllister, the record shows that the phone was used to contact three other people who knew Jackson personally: Corey Jackson, his cousin; a family friend and barber; and the mother of Jackson's child. The text messages between Corey Jackson and the number in question indicated that Corey knew the person with whom he was communicating because Corey sent contact information for a third party to the person. Corey testified that he would not send a third party's phone number to someone that he did not know "from Adam." *See id.* at *5–6.

Finally, the custodian of records for the cell phone provider Metro PCS testified the cell phone records were the business records of Metro PCS. *See* TEX. R. EVID. 803(6). The address listed for the Metro PCS subscriber was one of Jackson's previous addresses. *See* TEX. R. EVID. 901(b)(3) (evidence can be authenticated by comparison to other authenticated evidence); *Tienda*, 358 S.W.3d at 645–46.

The trial court did not state any basis for its ruling. However, this combination of evidentiary facts is sufficient to support a reasonable trial court's belief that the cell phone in question was used by Jackson. *See Butler*, 2015 WL 1816933, at *5–8; *Tienda*, 358 S.W.3d at 645–46. In this case, the cell phone records span about two and a half days, and during that time, the phone was used to contact four people who appeared to know Jackson personally. *See Butler*, 2015 WL 1816933, at *3 (recognizing that "cell phones tend to be personal and user-specific"). The cell phone subscriber's address was an old address of Jackson's. The State was not required to "rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *See Campbell*, 382 S.W.3d at 549. The trial

court's decision to admit the cell phone records was within the "reasonable zone of disagreement."[4]  *See Butler*, 2015 WL 1816933, at *5–8; *Tienda*, 358 S.W.3d at 645–46. Because we conclude the trial court did not abuse its discretion in admitting the cell phone records at trial, we also conclude the trial court did not err in denying Jackson's motion to suppress.  We decide Jackson's first issue against him.

## III.  MOTION TO ADJUDICATE GUILT

In his second issue, Jackson argues that the trial court abused its discretion in granting the State's motion to adjudicate guilt because the evidence was insufficient to show that Jackson violated a condition of his probation.  The State contends that each of the eighteen violations alleged in its motion were supported by sufficient evidence.

### A. Standard of Review and Applicable Law

"The decision to proceed to an adjudication of guilt and revoke deferred adjudication community supervision is reviewable in the same manner as a revocation of ordinary community supervision."  *Richardson v. State*, No. 05-11-00950-CR, 2012 WL 5350979, at *4 (Tex. App.—Dallas Oct. 31, 2012, pet. ref'd) (mem. op., not designated for publication) (citing TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(b) (West 2011)).  We review an order revoking community supervision for an abuse of the trial court's discretion.  *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006).

"To determine whether a trial court abused its discretion, we look to whether the State has met its burden of proof."  *Lee v. State*, 952 S.W.2d 894, 897 (Tex. App.—Dallas 1997, no pet.).  In a revocation proceeding, the State has the burden to prove the allegations in the motion

---

[4] Under the title "Harm Analysis" in the argument section of issue one, Jackson contends the admission of the text messages violated his Fifth Amendment right against self-incrimination.  The text messages were Jackson's own statements being offered against him.  Therefore, the statements were admissible as admissions by a party-opponent.  *See* TEX. R. EVID. 801(e)(2)(A); *Trevino v. State*, 991 S.W.2d 849, 853 (Tex. Crim. App. 1999) ("Rule 801(e)(2)(A) plainly and unequivocally states that a criminal defendant's own statements, when being offered against him, are not hearsay."); *Jackson v. State*, No. 05-13-00004-CR, 2014 WL 2611106, at *4 (Tex. App.—Dallas June 11, 2014, no pet.) (concluding defendant's statements were admissible under Rule 801(a)(2)(A) when defendant argued the statements violated his Fifth Amendment privilege).

to revoke by a preponderance of the evidence. *Rickels*, 202 S.W.3d at 763–64. This burden is met "when the greater weight of the evidence before the court creates a reasonable belief that the probationer violated a condition of probation." *Lee*, 952 S.W.2d at 897. "Proof of any one alleged violation is sufficient to support an order revoking probation." *Id.* at 900 (citing *O'Neal v. State*, 623 S.W.2d 660, 661 (Tex. Crim. App. [Panel Op.] 1981)). "It is the trial court's duty to judge the credibility of the witnesses and to determine whether the allegations in the motion to revoke are true or not." *Id.* at 897. Therefore, we view the evidence "in a light most favorable to the trial court's ruling." *Id.*

### B. Application of the Law to the Facts

The State's motion alleged eighteen violations of Jackson's community supervision. On appeal, Jackson argues nine of these cannot support the judgment adjudicating guilt because they are "old technical violations" that were contained in previous motions to adjudicate filed by the State. While some of the allegations in the State's motion were included in previous motions to adjudicate guilt, each of those previous motions was withdrawn by the State before the motion was set for hearing or adjudicated by the trial court. *See Winkle v. State*, 718 S.W.2d 306, 308 (Tex. App.—Dallas 1986, no pet.) (concluding trial court did not abuse its discretion in revoking appellant's probation based on an allegation that was contained in prior motion to revoke because "no formal hearing was held" on the prior motion, so "the State was free to refile the motion to revoke and to allege some or all of the offenses it had alleged previously, with or without the allegation of a new violation"). Two probation officers[5] testified that while on probation, Jackson failed to complete his community service hours as he was required to do. Jackson does not challenge the evidence supporting this alleged violation. "Proof of any one

---

[5] One probation officer was employed by Dallas County, where Jackson was placed on community supervision. The other probation officer was employed by Collin County, where Jackson's community supervision was transferred to be closer to his residence.

alleged violation is sufficient to support an order revoking probation." *Lee*, 952 S.W.2d at 900 (citing *O'Neal*, 623 S.W.2d at 661). Accordingly, we decide Jackson's second issue against him.

## IV. RIGHT TO TRIAL BY JURY

In his third issue, Jackson contends the trial court denied him a trial by jury. The State responds that Jackson waived his right to a jury trial.

### A. Standard of Review

"As a matter of federal constitutional law, the State must establish, on the record, a defendant's express, knowing, and intelligent waiver of jury trial." *Hobbs v. State*, 298 S.W.3d 193, 197 (Tex. Crim. App. 2009) (citing *Guillett v. State*, 677 S.W.2d 46, 49 (Tex. Crim. App. 1984)). "[Q]uestions involving legal principles and the application of law to established facts are properly reviewed de novo." *Kothe v. State*, 152 S.W.3d 54, 62-63 (Tex. Crim. App. 2004).

### B. Applicable Law

A criminal defendant has the right to a trial by jury. U.S. CONST. amend. VI; TEX. CONST. art. I, § 15; TEX. CODE CRIM. PROC. ANN. art. 1.12 (West 2005); *Lowery v. State*, 974 S.W.2d 936, 940 (Tex. App.—Dallas 1998, no pet.). Subject to the conditions of Article 1.13 of the Texas Code of Criminal Procedure, a criminal defendant also has the right to waive a jury trial. TEX. CODE CRIM. PROC. ANN. art. 1.13(a) (West Supp. 2014); *Shaffer v. State*, 769 S.W.2d 943, 944 (Tex. Crim. App. 1989), *adopted and judgment modified on reh'g*, 780 S.W.2d 801. Under Article 1.13(a),

> the waiver must be made in person by the defendant in writing in open court with the consent and approval of the court, and the attorney representing the state. The consent and approval by the court shall be entered of record on the minutes of the court, and the consent and approval of the attorney representing the state shall be in writing, signed by that attorney, and filed in the papers of the cause before the defendant enters the defendant's plea.

TEX. CODE CRIM. PROC. ANN. art. 1.13(a).

"The presumption of regularity is a judicial construct that requires a reviewing court, absent evidence of impropriety, to indulge every presumption in favor of the regularity of the proceedings and documents in the lower court." *Light v. State*, 15 S.W.3d 104, 107 (Tex. Crim. App. 2000). When applying the presumption of regularity to the waiver of a jury trial, a recitation in the judgment that the defendant "waived trial by jury" "is 'binding in the absence of direct proof of [its] falsity.'" *Johnson v. State*, 72 S.W.3d 346, 349 (Tex. Crim. App. 2002) (quoting *Breazeale v. State*, 683 S.W.2d 446, 450 (Tex. Crim. App. 1984) (op. on reh'g)); *Nielson v. State*, No. 05-02-00299-CR, 2003 WL 152759, at *1–2 (Tex. App.—Dallas Jan. 23, 2003, no pet.) (mem. op., not designated for publication).

"[A] revocation proceeding is not the type of 'criminal prosecution' in which the defendant can demand a trial by jury." *Harris v. State*, 486 S.W.2d 317, 318 (Tex. Crim. App. 1972); *see also Hood v. State*, 458 S.W.2d 662, 663 (Tex. Crim. App. 1970) ("[W]here a motion to revoke probation is filed alleging that the defendant has committed an offense, he is not entitled to a jury trial on the issue of whether he is guilty of the offense alleged for revocation."). "The motion to revoke, where based on new criminal charges, may be joined with the trial of those charges." *Berry v. State*, 976 S.W.2d 735, 737 (Tex. App.—Tyler 1998, pet. ref'd).

### C. Application of Law to the Facts

Jackson contends that the trial court violated his right to a trial by jury on the later charge of aggravated sexual assault. The State contends that Jackson waived his right to a jury trial in writing and in open court on the day of trial.

The record shows that the trial court elected to hear the State's motion to adjudicate guilt, arising from Jackson's prior conviction for aggravated robbery, before holding a trial on the later charge of aggravated sexual assault. At a hearing on April 16, 2013, Jackson was given the option either (1) to proceed with the hearing on the State's motion to adjudicate guilt alone or (2)

to waive a jury trial on the aggravated sexual assault charge and to proceed with a combined trial by the court as to both the aggravated sexual assault charge and the State's motion.

The clerk's record includes a "waiver of jury" form that was signed by Jackson and recites that Jackson appeared in open court and waived his right to trial by jury on the aggravated sexual assault charge. *See* TEX. CODE CRIM. PROC. ANN. art. 1.13(a). The waiver was approved and signed by defense counsel, and it was consented to, approved, and signed by the State and the trial judge. *See id.* The waiver was filed with the trial court on February 4, 2014, before Jackson entered his plea of not guilty. *See id.* Jackson does not contend that the waiver did not comply with Article 1.13. The written waiver is sufficient to demonstrate Jackson waived a jury trial. *See id.*; *Holcomb v. State*, 696 S.W.2d 190, 195 (Tex. App.—Houston [1st Dist.] 1985), *aff'd as reformed*, 745 S.W.2d 903 (Tex. Crim. App. 1988) (concluding defendant's signing of written waiver that satisfied the requirements Article 1.13 was sufficient to find that defendant had intelligently waived his right to a jury trial).

Furthermore, the judgment recites that Jackson "waived the right of trial by jury." *See Johnson*, 72 S.W.3d at 349 (holding recitation in the judgment that defendant "waived trial by jury" was "'binding in the absence of direct proof of [its] falsity'" (quoting *Breazeale*, 683 S.W.2d at 450)). Jackson has not presented any evidence asserting the written waiver or the recitation in the judgment was false. *See id.*; *Nielson*, 2003 WL 152759, at *2. He does not contend that he was unaware of his right to a jury trial, and the record does not indicate that Jackson was unaware of this right. *See Johnson*, 72 S.W.3d at 349; *Nielson*, 2003 WL 152759, at *2. On the day of trial, the trial court stated, "There is a signed waiver of right to jury trial in the new case and that has been approved, signed both by the State, the defendant, and the defense." No objections were made. On this record, we conclude Jackson voluntarily, knowingly, and intelligently waived his right to a jury trial. *See Johnson*, 72 S.W.3d at 349;

*Nielson*, 2003 WL 152759, at *2; *Holcomb*, 696 S.W.2d at 195. We decide Jackson's third issue against him.

## V. MODIFICATION OF JUDGMENT

We note that the judgment in cause no. 05-14-00274-CR, adjudicating Jackson's guilt for his prior aggravated robbery conviction, states, "While on community supervision, Defendant violated the terms and conditions of community supervision as set out in the State's ORIGINAL Motion to Adjudicate Guilt." However, the State's original motion to adjudicate guilt was not adjudicated by the trial court. The State's February 3, 2014, amended motion to adjudicate guilt was the only motion to adjudicate guilt heard by the trial court in this case.

"This Court has the power to modify an incorrect judgment to make the record speak the truth when we have the necessary information to do so." *Estrada v. State*, 334 S.W.3d 57, 63 (Tex. App.—Dallas 2009, no pet.); *see also* TEX. R. APP. P. 43.2(b). "The authority of an appellate court to reform an incorrect judgment is not dependent upon the request of any party, nor does it turn on the question of whether a party has or has not objected in the trial court." *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd). We conclude the reference to "the State's ORIGINAL Motion to Adjudicate Guilt" in the judgment was a clerical error. Accordingly, we modify the judgment in cause no. 05-14-00274-CR to reflect the fact that the trial court found Jackson violated the terms and conditions of community supervision as set out in the State's February 3, 2014, amended motion to adjudicate guilt.

## VI.  CONCLUSION

We decide Jackson's three issues against him.  In cause no. 05-14-00274-CR, we affirm as modified the trial court's judgment revoking community supervision and adjudicating guilt, *see* TEX. R. APP. P. 43.2(b), and in cause no. 05-14-00275-CR, we affirm the trial court's judgment of guilty.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
140274F.U05

–13–



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

MICHAEL WAYNE JACKSON, Appellant

No. 05-14-00274-CR       V.

THE STATE OF TEXAS, Appellee

On Appeal from the 292nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F-1057228-V.
Opinion delivered by Justice Lang. Justices
Stoddart and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

> In the sentence beginning, "While on community supervision, Defendant violated the terms and conditions of community supervision as set out in the State's ORIGINAL Motion to Adjudicate Guilt as follows," we delete the word "ORIGINAL" and replace it with the word "AMENDED."

As **REFORMED**, the judgment is **AFFIRMED**. We direct the trial court to prepare a new judgment that reflects these modifications.

Judgment entered this 17th day of June, 2015.

–14–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MICHAEL WAYNE JACKSON, Appellant

No. 05-14-00275-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 292nd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-1370043-V.
Opinion delivered by Justice Lang. Justices Stoddart and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 17th day of June, 2015.