*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★  ★ ★ ★

# OPINION

No. 04-07-00799-CR

Frank **TRINIDAD**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 81st Judicial District Court, Atascosa County, Texas
Trial Court No. 05-08-0191-CRA
Honorable Donna S. Rayes, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:    Catherine Stone, Justice
Sandee Bryan Marion, Justice
Rebecca Simmons, Justice

Delivered and Filed:  July 30, 2008

REVERSED AND REMANDED

Appellant Frank Trinidad was found guilty by a jury for the offense of murder and assessed punishment at life imprisonment in the Institutional Division of the Texas Department of Criminal Justice.  Trinidad asserts on appeal that the evidence is legally and factually insufficient, and that the trial court erred in allowing the alternate juror to be present for the jury deliberations.  Although we hold that the evidence is legally and factually sufficient, the alternate juror's presence violated Article V, Section 13 of the Texas Constitution, and we, therefore,

reverse the judgment of the trial court and remand this matter for proceedings consistent with this opinion.

## FACTUAL BACKGROUND

On March 14, 2004, the body of Ronald Enriquez was discovered in Atascosa County, Texas. After obtaining statements from two eyewitnesses and two individuals to whom Trinidad confessed his involvement, Trinidad was arrested for the murder of Enriquez.

Jury selection began on October 8, 2007. In addition to the twelve members of the jury, an alternate juror was chosen. Prior to deliberations during the guilt/innocence phase, the court instructed the alternate to go into the jury room with the jury for deliberations, and to "be part of the deliberation process," but not to vote. The jury returned a verdict of guilty and, once again, the alternate was instructed to join the jury during its deliberation on punishment with the caveat that she was not allowed to vote.

## SUFFICIENCY OF THE EVIDENCE

In his second and third issues on appeal, Trinidad contends the evidence is legally and factually insufficient to support a murder conviction based on his actions or under the law of parties.

## A.      Standard of Review

In a legal sufficiency review, we examine the evidence in the light most favorable to the verdict, and ask whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). We must affirm the trial court's judgment if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997). The standard

of review is the same whether the evidence is direct, circumstantial, or both. *Kutzner v. State*, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999).

When reviewing a case for factual insufficiency, the appellate court will review all of the evidence in a neutral light. *Cain v. State*, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997). The court reviews the evidence to determine whether the evidence introduced to support the verdict, though legally sufficient, is nevertheless "so weak" that the verdict seems "clearly wrong and manifestly unjust." The court must also determine whether, considering conflicting evidence, the verdict, though legally sufficient, is nevertheless against the great weight and preponderance of the evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006).

**B.      Murder – Texas Penal Code Section 19.02 and the Law of Parties**

A person commits murder if he intentionally or knowingly causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1) (Vernon 2003). The defendant acts as a principal if he intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. *Id*. at § 19.02(b)(2). Under the law of parties, a person may be found guilty of murder if the offense was committed by his own conduct, by the conduct of another for which he was criminally responsible, or by both. *Id*. at §§ 7.01(a), 7.02 (Vernon 2003). Section 7.02 provides in part:

> (a)   A person is criminally responsible for an offense committed by the conduct of another if:
>            . . . .
>       (2)   acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.

*Id*. at § 7.02 (Vernon 2003).

Circumstantial evidence alone can be used to prove a person is a party to an offense. *Powell v. State*, 194 S.W.3d 503, 506 (Tex. Crim. App. 2006). "Each fact need not point directly

and independently to the guilt of the appellant, as long as the cumulative effect of all the incriminating facts are sufficient to support the conviction." *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).

The trial court's charge instructed the jury that, upon a finding of beyond a reasonable doubt, Trinidad could be convicted of murder, as a principal, or murder under the law of parties. Trinidad now contends the evidence is legally insufficient to prove that he fired the shot that killed Enriquez and second, that the evidence is legally and factually insufficient to prove he acted as a party to the offense.

## C.    Testimony Presented

The State called several witnesses to testify at trial regarding the murder allegations against Trinidad, several of which were present during or shortly after the incident in question. Christopher Anthony Vasquez ("Tony"),[1] a dealer for Trinidad, was outside the residence when Enriquez arrived.  Tony explained that he "waited for [Enriquez] to show up and when I was giving [the cocaine] to him he was already mad and said he didn't want to talk to me because I was a nobody and he punched me in the face and I fell to the ground."  Tony continued that Enriquez then threw Christopher Vasquez ("Chris"), Tony's twin brother, off the porch steps and headed inside the residence.  According to Tony, Jorge Zapata came from beside the refrigerator and shot Enriquez, who was unarmed, in the back of the head and, while Enriquez "was lying face down on the ground . . . Frank shot him in the back of the head."  Tony further told the jury that Zapata, Trinidad and Chris wrapped Enriquez's head in plastic, put him in the back of the car and before driving off, instructed Tony to clean up the mess at the house.  Additionally, when they returned the next day, Trinidad asked Tony to clean up the mess in his car.

---

[1]  For purposes of clarity, Christopher Anthony Vasquez will be referred to as "Tony" and Christopher Vasquez will be referred to as "Chris."

Chris confirmed Tony's testimony and further explained that Zapata's passing of the firearm to Trinidad was "like a split second he handed him over and popped him on the side [of his head in the temple]." He further explained that after helping load Enriquez's body into the car, the three men drove around, ultimately checking into a hotel. The following morning, as they were driving back to the residence, Trinidad offered, "[y]ou know what; I'll just dump it over here in Atascosa" explaining that several bodies had recently been found dumped in Atascosa. So the three men dumped the body on the side of the road and Zapata lit Enriquez's body on fire.

In addition, to the Vasquez twins, the State called Ruby Perea and her husband Santos Gonzalez[2] who were at the residence the day after the murder. Perea testified that Trinidad bragged that "he had killed somebody" and even showed her and Gonzalez the kitchen where "[t]here was red stains on the floor, pieces of meat, something on the floor . . . [Trinidad] said that was the brains or some kind of meat on the floor from the guy that he had just shot." Perea also remembered Trinidad pointing out the four blood spatters on the wall in the hall. More specifically, Perea testified hearing Trinidad tell Gonzalez that Enriquez had come over and wanted a hundred dollars of cocaine but that Trinidad did not have it. Enriquez kept bugging Trinidad for the cocaine and when Trinidad asked him to leave, he hit one of the Vasquez twins. Trinidad also told Perea and Gonzalez that Enriquez was arguing with Zapata and when they started to fight was when Trinidad "got his rifle and shot the guy from the back" and then Zapata also shot him. Gonzalez confirmed Perea's testimony and also testified that Trinidad told him that they "took him out by Highway 536." Perea further told the jury that she heard Trinidad tell Gonzalez that the red stain in the back of this car was from Enriquez. Finally, Perea testified that

---

[2] The testimony revealed that Perea and Gonzalez considered themselves common-law spouses at the time of the incident, but they were no longer together at the time of the trial.

she and Gonzalez gave Trinidad a ride that same day and he joked "I burned that son of a bitch so that he would not stay alive."

**D.     Analysis**

The verdict rendered by the jury states, "We, the Jury find the defendant, Frank Trinidad, guilty of murder." We will uphold the verdict if the evidence is sufficient under either of the alternative theories. *See Rabbani v. State*, 847 S.W.2d 555, 558 (Tex. Crim. App. 1992) (general verdict of guilty will be upheld when evidence is sufficient under any of the theories submitted). The Vasquez brothers both testified to witnessing Zapata and Trinidad shoot Enriquez. Additionally, Perea and Gonzalez testified to Trinidad's confessions the following day. Although Trinidad would have us believe that Zapata's initial shot was fatal, the jury could have reasonably believed either individual fired the first shot and that because the shots were fired so close in time, the order in which they were fired was irrelevant. Moreover, even if Zapata's shot was fired first, the jury could have reasonably believed that Trinidad acted with intent to aid, attempt to aid, or encourage Zapata in the committing of the offense. Thus, under section 7.02(a)(2), the jury could have reasonably found that Trinidad was criminally responsible for the offense of murder committed by Zapata. TEX. PENAL CODE ANN. § 7.02 (Vernon 2003). Based on a review of the entire record, we hold that the jury could have found Trinidad guilty under the court's charge if they determined either: (1) Trinidad intentionally caused the death of Enriquez by shooting him, or (2) that Zapata caused the death of Enriquez by shooting him and Trinidad was criminally responsible for the action. Additionally, we cannot say that the evidence was "so weak" that the verdict seems "clearly wrong and manifestly unjust." Accordingly, we hold that the evidence is legally and factually sufficient to sustain the conviction.

## ALTERNATE JUROR

Trinidad's next issue on appeal is that the trial court erred when it instructed the alternate juror to enter the jury room and be part of the deliberations. The selection of the alternate juror was in accordance with article 33.011 of the Texas Code of Criminal Procedure and is not in dispute. After the completion of testimony and the attorneys' closing arguments, the trial court instructed the alternate juror that she was to:

> go into the jury room and be part of the deliberation process and [the] only thing that you will not do is, you will not vote with the jury. If anyone of the jury members were to become disabled during [the] deliberation process then you would step in and serve and vote at that time but at this time we have twelve and you do not vote.

Trinidad argues that allowing the alternate juror in the jury deliberation room violated his constitutional right to a twelve member jury under the Texas Constitution, as well as articles 33.01, 33.011, 36.22, and 36.29 of the Texas Code of Criminal Procedure. The State contends Trinidad waived his complaint by failing to object to the alternate juror's participation in deliberations, and the inclusion of an additional juror was not error.

## PRESERVATION OF ERROR

### A.    General Standards

The general requirement for preservation of error is set forth in Rule 33.1(a) of the Texas Rules of Appellate Procedure. *See* TEX. R. APP. P. 33.1(a). Succinctly, Rule 33.1 requires "a timely, specific objection and a ruling by the trial court" to preserve a complaint for appellate review. *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004). Yet an objection is not required in every instance. The Texas Court of Criminal Appeals has identified three categories of rules or rights: (1) systemic (or absolute) requirements; (2) waivable rights; and (3) forfeitable rights. *Id.* at 340. Rule 33.1(a) does not apply to a violation of the first two categories of rules

or rights, and a violation of those rules or rights may be raised for the first time on appeal. *Id.* at 341.

A systemic requirement is "a law that a trial court has a duty to follow even if the parties wish otherwise." *Id*. at 340. Systemic rights include those that are statutorily or constitutionally mandated, or are otherwise not optional, waivable or forfeitable by either party. *Sanchez v. State*, 120 S.W.3d 359, 365-66 (Tex. Crim. App. 2003). Absolute, systemic rights are rights about which a litigant has no choice and are independent of the litigant's wishes. *Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993), overruled on other grounds, *Cain v. State*, 947 S.W.2d 262 (Tex. Crim. App. 1997). The implementation of these absolute requirements and prohibitions is not optional and is therefore, neither waivable nor forfeitable by any party. *Id*.

Waivable rights are rights that a judge has an independent duty to implement absent an effective waiver by the defendant. *Id.* at 280. "Although a litigant might give [waivable rights] up and, indeed, has a right to do so, he is never deemed to have done so in fact unless he says so plainly, freely, and intelligently, sometimes in writing and always on the record." *Id.* at 280 (citing *Goffney v. State*, 843 S.W.2d 583, 585 (Tex. Crim. App. 1992)). These rights are "so fundamental to the proper functioning of our adjudicatory process" that they do not vanish easily. *Marin*, 851 S.W.2d at 278-79.

Forfeitable rights arise from rules that are optional at the request of a defendant. *Id*. at 279. Rule 33.1 applies only to these rights. The judge is required to implement them only at the request of a party, and they are forfeited absent objection made at trial. *Id*. at 279-80; TEX. R. APP. P. 33.1.

**B.      Analysis**

In the present case, Trinidad's trial counsel did not object to the inclusion of the alternate juror in the jury deliberations.  Trinidad urges this court to address the error as systemic or waivable-only error that does not require a timely objection.  Because article 36.29 specifically allows a defendant to waive the required twelve person jury and proceed with fewer jurors, we cannot agree that a twelve-member jury is a systemic right so fundamental to the administration of justice that it cannot be waived even by a party's request.  TEX. CODE CRIM. PROC. ANN. art. 36.29(c) (Vernon 2007); *Mendez*, 138 S.W.3d at 340.  We, therefore, examine whether the alleged violation is a waivable-only right under the Texas Constitution.  *See* TEX. CONST. art. V, § 13.

Trinidad argues that his right to a twelve-person jury is a right that is waivable-only and "[w]aivers of Constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970); *see also Mendez*, 138 S.W.3d at 344.

Although the United States Constitution does not require that a specific number of jurors be seated on a jury panel, Article V, Section 13 of the Texas Constitution and article 33.01 of the Texas Code of Criminal Procedure both provide that the jury ***shall*** consist of twelve qualified jurors.  TEX. CODE CRIM. PROC. ANN. art. 33.01 (Vernon 2006); TEX. CONST. art. V, § 13.  In *Marin*, the Court of Criminal Appeals explained that "[s]ome rights are widely considered so fundamental to the proper functioning of our adjudicatory process as to enjoy special protection in the system."  *Marin*, 851 S.W.2d at 278.  These are rights that cannot be forfeited or relinquished without an express waiver and "are not extinguished by inaction alone." *Id.* (citing *Janecka v. State*, 823 S.W.2d 232, 243 n.2 (Tex. Crim. App. 1990) (opinion on rehearing)).  In

its analysis, the *Marin* court identified two such rights: assistance of counsel and the right to a jury trial. *Id*. at 279. More specifically, the "State may not successfully put [a defendant] to trial without counsel or jury merely because he voiced no objection to the procedure." *Id*.

The Constitutional right to a twelve person jury appears to be the type of right that requires special protection. It cannot be denied absent an express waiver. Accordingly, we hold that the right to a twelve member jury is a waivable-only right and Trinidad was not required to comply with rule 33.1 in order to preserve error. TEX. CODE. CRIM. PROC. ANN. art. 33.011(b) (Vernon 2007); TEX. R. APP. P. 33.1. We now examine the merits of Trinidad's claim and whether the participation of the alternate juror in deliberations violates the Texas Constitution.

## THE RIGHT TO A TWELVE MEMBER JURY

The right to a verdict rendered by twelve jurors is a constitutionally protected right in Texas. The Texas Constitution mandates that there shall be twelve jurors, but further provides that "[w]hen, pending the trial of any case, one or more jurors not exceeding three, may die, or be disabled from sitting, the remainder of the jury shall have the power to render the verdict; provided, that the Legislature may change or modify the rule authorizing less than the whole number of the jury to render a verdict." TEX. CONST. art. V, § 13. Additionally, article 36.29 of the Texas Code of Criminal Procedure provides that, under certain circumstances, eleven jurors may render a verdict in a felony case. TEX. CODE CRIM. PROC. ANN. art. 36.29 (Vernon 2006). *See Rivera v. State,* 12 S.W.3d 572, 579 (Tex. App.—San Antonio 2000, no pet.) (reiterating that the Texas Constitution requires twelve member jury absent certain statutory exceptions). There are no constitutional or statutory exceptions permitting more than twelve jurors, although there is

statutory authority for the impaneling of alternate jurors. TEX. CODE CRIM. PROC. ANN. art. 33.011 (enacted in an effort to avoid mistrials due to dismissal of jurors during trial).

Originally, article 33.011 required trial courts to discharge alternate jurors after the jury retired to consider its verdict. However, in 2007, House Bill 1086 was passed requiring an alternate juror to stay until "the jury has rendered a verdict on the guilt or innocence of the defendant and, if applicable, the amount of punishment." TEX. CODE CRIM. PROC. ANN. art. 33.011(b); Act of Sept. 1, 2007, 80th Leg., R.S., ch. 846, § 1. This amended version of article 33.011 became effective on September 1, 2007. Because Trinidad's trial commenced on October 8, 2007, the amended version of article 33.011(b) is applicable to the case.

## A. Article 33.011(b)

Pursuant article 33.011(b) the trial court permitted the alternate juror to remain with the jury, in the deliberation room, until a verdict was reached and sentencing was completed. Trinidad argues this is a violation of his constitutional right to a jury of twelve, and only twelve, jurors. TEX. CONST. art. V, § 13. Further, he contends allowing the alternate juror to remain with the jury violates article 36.22's prohibition that no one is permitted to be present while the jury is deliberating. TEX. CODE CRIM. PROC. ANN. art. 36.22 (Vernon 2006).

The State contends the presence of the alternate juror was not a violation under the Texas Constitution, nor was it a violation of articles 33.01, 33.011, and 36.22. TEX. CONST. art. V, § 13; TEX. CODE CRIM. PROC. ANN. arts. 33.01, 33.011, and 36.22 (Vernon 2006). The State alleges the presence of the alternate was permitted by the amended version of the statute to ensure that twelve qualified jurors would be in the jury room to render a verdict. In addition, the State points out that twelve jurors did, in fact, render the verdict in this case and sign the same.

**B.      Statutory Construction**

The best evidence of legislative intent is the language of the statute. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). We may go behind the statutory text only if the statute is ambiguous or if the application of the statute's plain language would lead to an absurd result that the legislature could not possibly have intended. *Id*. The plain language of article 33.011(b) makes clear that an alternate juror should not be dismissed until after the jury has rendered a verdict and punishment has been assessed. TEX. CODE CRIM. PROC. ANN. art. 33.011(b). The statute, however, fails to address the role of the alternate during deliberations and whether the alternate should participate in the jury's deliberations.

Of interest, however, is the statement of legislative intent regarding H.B. 1086. The bill analysis of H.B. 1086 explains the extension of the alternate's service to verdict was needed to prevent mistrials that occur when a juror becomes disqualified after the jury has begun its deliberations. House Research Org., Bill Analysis, Tex. H.B. 1086, 80th Leg., R.S. (2007).[3] Immediately prior to the passage of the bill in the House, Representative Macias asked Representative Hughes if the intent was that the alternate who did not replace a regular juror refrain from participating in any juror deliberations in the case. Representative Hughes responded:

> Yes, sir. As you know, only the 12 jurors who are seated as regular jurors may participate in any jury deliberations. My intent is for alternate jurors who do not replace a regular juror to not participate in any deliberations- - whether that be guilt or innocence or punishment – and ***that the court would direct the alternate jurors to be separated from the regular jurors and to refrain from deliberating*** or discussing the case unless they are seated as a regular juror.

Texas House Journal, Tex. H.B. 1086, 80th Leg., R.S., 83rd Leg. Day (2007) (emphasis added).

---

[3] Prior to the amendment to article 33.011(b), the alternate was dismissed prior to deliberations, and if a juror became unable or disqualified to serve thereafter, a jury could continue deliberations with eleven members only if both the state and the defense agreed. TEX. CODE CRIM. PROC. ANN. art. 36.29 (Vernon 2006). If they did not both agree, a mistrial was declared resulting in wasted time and expense.

**C.     Analysis**

The Texas Constitution does not authorize *more than* twelve jurors to serve on a jury. TEX. CONST. art. V, § 13.  To avoid a conflict with the Constitution, the State argues that the alternate juror should not be considered a juror.  However, such an alternate would then be considered an outsider and run afoul of article 36.22.  TEX. CODE CRIM. PROC. art 36.22 (Vernon 2006).  Article 36.22 provides: "No person shall be permitted to be with a jury while it is deliberating.  No person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court."  *Id*.  "The purpose of this statute is to preserve the confidentiality of the jury's deliberations so that the jurors may fully and freely discuss the case."  *Rojas v. State*, 171 S.W.3d 442, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).

We conclude that the Texas Constitution precludes the deliberation of more than twelve jurors.  TEX. CONST. art. V, § 13.  If the alternate is not considered a juror, then the participation of the alternate in deliberations violates article 36.22's prohibition against outside influence. TEX. CODE CRIM. PROC. ANN art. 36.22 (Vernon 2006).  The trial court, therefore, erred in directing the alternate juror to participate in jury deliberations.  Having determined error, we next conduct a harm analysis.

HARM ANALYSIS

**A.     Texas Rule of Appellate Procedure 44.2**

Rule 44.2(a) categorizes the review of errors in a criminal case into two general categories: constitutional errors and non-constitutional errors.  TEX. R. APP. P. 44.2.  With regard to constitutional errors, if the error is a structural constitutional error, then the error is reversible without a harm analysis.  TEX. R. APP. P. 44.2(a); *Cain v. State*, 947 S.W.2d 262, 264 (Tex.

Crim. App. 1997) (superseded by statute on other grounds). On the other hand, if the error is a nonstructural, constitutional error, an appellate court must reverse the trial court if it fails to find beyond a reasonable doubt that the error did not contribute to the judgment. TEX. R. APP. P. 44.2(a). All other errors, defects, irregularities or variances that do not affect the substantial rights of a defendant are disregarded. TEX. R. APP. P. 44.2(b).

As previously determined, the right to a twelve-member jury is guaranteed by Article V, Section 13 of the Texas Constitution and article 33.01 of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 36.22 (Vernon 2006); TEX. CONST. art. V, § 13. Because we do not distinguish between a defendant's right to a jury trial and his right to a twelve-person jury, the error in this case was a constitutional error requiring a determination of whether the error is structural or non structural and thus subject to harmless error review. TEX. R. APP. P. 44.2(a); *see also Lowery v. State*, 974 S.W.2d 936, 941 (Tex. App.—Dallas 1998, no pet.). Structural errors are constitutional violations "affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991); *see also Cain*, 947 S.W.2d at 264 (determining that constitutional errors not subject to harm analysis are limited to "certain federal constitutional errors labeled by the United States Supreme Court as 'structural'"). Because the error presented has not been labeled as structural, we hold that allowing an alternate juror to be present in the jury room during the jury deliberations is a non-structural, constitutional error subject to a harm analysis.

**B.      Harm Analysis**

Here, although the trial court instructed the alternate juror that she was to "go into the jury room and be part of the deliberation process . . . [but] not vote," the record is silent as to any effect the alternate juror had on the jury deliberations. *Cf. Bogue v. State*, 204 S.W.3d 828, 829-

30 (Tex. App.—Texarkana 2006, pet. ref'd) (testimony of alternate juror and jury foreman confirmed alternate juror's presence in court room for a period of five to thirteen minutes did not constitute harm); *Rojas*, 171 S.W.3d at 450-51 (testimony of the jurors and the alternate juror rebutted any allegations of harm resulting from alternate juror remaining in the jury room during deliberations for fifteen minutes). Here, the trial court not only instructed her to be present, but actually instructed her to participate in the actual deliberations and we must assume she followed these instructions. *Westbrook v. State*, 29 S.W.3d 103, 116 (Tex. Crim. App. 2000). *Cf. United States v. Olano*, 507 U.S. 725, 729 (1993) (presence of alternate juror in jury deliberations was viewed in light of trial court's instructions that "according to the law, the alternates must not participate in the deliberations . . . [W]e are going to ask [the alternate] that you not participate" and thus did not prejudice defendant). Accordingly, we cannot conclude, beyond a reasonable doubt, that the alternate juror's presence in the jury room did not contribute to the conviction or punishment. We, therefore, reverse the trial court's judgment and remand this matter to the trial court for further proceedings.

Rebecca Simmons, Justice

PUBLISH