

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00070-CR

_____

KEVIN ASHLEY PARNELL, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 396th District Court
Tarrant County, Texas
Trial Court No. 1513054D

---

Before Birdwell, Bassel, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

**MEMORANDUM OPINION**

Appellant Kevin Ashley Parnell pled not guilty to murdering Sammie Jones and guilty to tampering with evidence. A jury convicted Appellant of both offenses, rejected his sudden-passion claim and the State's hate-crime enhancement allegation, and assessed his punishment at forty-six years' and two years' confinement, respectively. *See* Tex. Code Crim. Proc. Ann. art. 42.014; Tex. Penal Code Ann. §§ 12.32(a), 12.34(a), 12.47(a), 19.02(a)(2), (b)(1)–(2), (c)–(d), 37.09(a)(1), (c). The trial court sentenced him accordingly. Appellant raises two appellate issues. In his first issue, he complains that the trial court violated his Texas constitutional right to a jury of twelve persons by retaining a juror who was not fluent enough in English to understand the proceedings. In his second issue, Appellant argues that his defense counsel at trial was constitutionally ineffective because he failed to diligently inquire in voir dire whether all venire members were fluent in English. Because we hold that (1) Appellant invited any error regarding the juror's remaining on the panel and, alternatively, forfeited his right to complain of the juror; and (2) Appellant did not satisfy his burden to prove ineffective assistance of counsel, we affirm the trial court's judgments.

### I. Background Facts[1]

Appellant's murdering Jones stemmed from the relationship between Appellant's

---

[1]Appellant does not challenge the sufficiency of the evidence supporting his convictions. We therefore omit a detailed statement of facts.

stepdaughter Jordan Garrard and Jordan Briggs, Jones's roommates. Garrard and Briggs were friends in high school, and both lived with Appellant and his wife for a short time thereafter. Garrard had a cocaine problem, and Briggs supplied her with drugs. Briggs soon moved out, followed by Garrard after Appellant learned that she had stolen from him. Briggs, Garrard, and Jones then became roommates.

A few days before Labor Day in 2017, Garrard was arrested for prostitution and confined in jail. On Labor Day, Appellant started drinking early and drank all day. By 4:00 p.m., he had become angry about "everything that was going on" and Briggs's perceived role in destroying Appellant's family. Appellant "blew up Facebook" with messages to Briggs. The messages were laced with racial slurs and threats. Between 5:00 and 6:00 p.m., Appellant drove to the house Briggs, Jones, and Garrard shared, parked in the driveway, and knocked on the door. Briggs hid and tried to persuade Jones not to answer the door. Jones answered the door, he and Appellant exchanged words, and "it got heated." Appellant entered the home and shot Jones point-blank in the face, killing him.

Fort Worth police later arrested Appellant, and in an interview, he confessed to killing Jones and to throwing the gun in Lake Worth. He stated that he had never met Jones but was "pretty sure he was one of the dealers too."

Briggs testified that Appellant forced Garrard out of his home because she was black, that Appellant was mad at him regarding Garrard's incarceration because he was

3

black, and that he heard Appellant use racial slurs before he heard the gunshot that killed Jones. Garrard testified that Briggs was not a truthful person.

## II. Procedural Facts

This appeal focuses not on the facts of the offenses but on jury selection and the retention of juror Raul Gonzalez. Before voir dire, because of the State's hate-crime allegation against Appellant, the prosecutor proposed that the supplemental juror questionnaire include three questions about racial bias or prejudice:

6. Have you ever felt that you were the target of racial bias or prejudice? □ YES □ NO If YES, tell us about this experience:_____

7. If your child (or a child in your family) used a racial slur toward another child at school, how would you handle it, and what would you tell . . . them?_____

8. On a scale of 1 to 4, circle the number which represents how strongly you agree or disagree with the following statement:

   "In America, racial prejudice is not as big of a problem as some would lead us to believe[.]"

Defense counsel objected:

[T]he open-endedness of some of these questions like question number six, have you ever felt that you were the target of racial bias or prejudice, . . . gives the venireman the opportunity to create answers that might seem more contrived or to avoid their true feelings. And . . . it's been my experience in the past that people a lot of times speak differently in public than they do in private . . . . [M]y next argument would be that just about every minority person of color or female has probably experienced in all probability some bias or prejudice at some point in time in their life, and it's just going to be used to amplify that issue in the venireman's mind before they actually get to the courtroom.

And for those reasons, Judge, I think we would also say that most of these questions are fairly simplistic in nature and could be answered and covered in a[n] open question and answer with the venireman jury, the actual public voir dire. And for those reasons, Judge, we would ask that we would just go with the same jury questionnaire that we use in most every case in this courtroom that provides basic information for the jurors, the standard information that we use to make decisions every day in this courthouse.

The trial court implicitly overruled defense counsel's objection and included the questions about race in the supplemental questionnaire. Gonzalez filled his jury questionnaire out in English.

In voir dire, the parties did not generally question the venire members about their ability to understand English, but the topic did arise. For example, during the trial court's portion of voir dire, the court listed reasons that a defendant might not want to testify. One of those reasons was that the defendant might not "have an adequate command of our language. You know, when you study English, it is a very difficult language to learn. And then you put Texan on top of it? I mean, that is a double whammy." Additionally, in the State's portion of voir dire, the prosecutor questioned individual venire members, row by row. When it became her turn to answer the question, venire member Patricia Terrazas instead stated, "My English understanding is 80 percent, so I would feel bad because I don't understand the case with something." The prosecutor asked Terrazas about her comprehension of spoken English only after Terrazas volunteered information. Upon the prosecutor's questioning, Terrazas then indicated that she understood 80–85 percent of spoken English but did not understand

*bias or prejudice.* The prosecutor did not inquire generally or specifically about any other venire member's command of the English language. The parties agreed to excuse Terrazas before the defense's voir dire began.

In the defense's voir dire, the topic of understanding English did not arise. Defense counsel discussed the then current event involving Virginia's governor and a photograph from his 1984 medical school yearbook of a white man in black face that some had alleged was the governor. Defense counsel asked the venire members, row by row, whether the governor should be able to stay in office and redeem himself. When his turn came, Gonzalez answered that he had "no opinion." Gonzalez did not volunteer during voir dire that he had trouble understanding English, and he ultimately sat on the jury.

At the end of the first day of testimony, Gonzalez told a bailiff that he was sometimes "having some trouble understanding some of the English." Before the second day's testimony, in a hearing outside the jury's presence, Gonzalez testified that he

- had gone to the 9th grade in Mexico;

- had been in the United States almost 30 years;

- had learned English while working at his various jobs in the United States;

- had filled out his jury questionnaire himself, using a Google dictionary to translate words he did not understand, such as *rehabilitation*, *deterrence*, *punishment*, *racial prejudice*, and *unlawful*;

6

- had had to say that he had no opinion when defense counsel asked him a question in voir dire because he did not understand some of the words;

- understood only part of the concept of *reasonable doubt* that was discussed in voir dire; and

- did not understand some of the first day's testimony.

Gonzalez also said that he had understood what Terrazas (who sat next to him) had said during voir dire about not understanding English, but he thought that "it would not be that much talk or questions." "[T]hat is why I say probably it's going to be not that much and it's going to be my last day, but I don't know this one continues. So it's more." He also testified that the "talking" was "too fast." In response to the prosecutor's questions, Gonzalez said that it would bother him a "little bit," frustrate him, and worry him that he might make the wrong decision when deliberating if he could not understand everything going on in the courtroom.

After the trial judge, the prosecutor, and defense counsel questioned Gonzalez, defense counsel moved for dismissal of Gonzalez from the jury and a mistrial on the basis that Gonzalez had always been disqualified and had not become disabled after the trial began, stated that he believed it was reversible error to proceed with eleven jurors, and also stated that Appellant did not agree to go forward with eleven jurors. Through more discussion with defense counsel, the trial court ascertained that defense counsel was *not* asking that Gonzalez be excused or removed from the jury. The trial court initially ruled that Appellant's complaint was forfeited because it had not been raised in voir dire and that Gonzalez would remain on the jury because no party had asked for

7

his removal. After a short break, defense counsel asked that Gonzalez be excused from the panel and that a mistrial be granted on the grounds that only eleven jurors would remain and that Appellant did not agree to go forward with only eleven jurors. The trial court said that it could remove Gonzalez based on disability, not disqualification (because Appellant had not preserved that issue), and then proceed with eleven jurors; but the trial court explained that it would not grant a mistrial. The trial court stated,

> I'm just saying from the status of the record I'm convinced that [the disqualification ground] was not preserved. Now, we can go forward with him or without him. Either way you would have your error—you would have your potential point of error. So . . . if you want me to remove him, I would remove him because he is disabled, not because he is disqualified.

Defense counsel replied, "Your Honor, we'd like to leave him on the jury."

After the close of evidence in the guilt–innocence phase but before the trial court charged the jury, defense counsel renewed the motion for mistrial outside the jury's presence and, for the first time, raised constitutional arguments:

> Judge, on Monday, we voir dired a panel. At that time there were approximately 70 jurors called, 67 or so appeared, and we had the opportunity to voir dire on each side. There were several jurors disqualified for cause. . . . Mr. Gonzalez was sitting next to a juror that answered a question that the State asked her specifically whether or not the juror sitting next to him understood what . . . was going on and she said maybe 80, 85 percent. And by agreement that juror was struck.

> The juror sitting next to . . . her, Juror Gonzalez, . . . after hearing the first four witnesses on Monday afternoon[ and] after being empaneled on the jury, . . . approached the deputy and explained that he was having difficulty understanding what was going on.

> The Court itself asked over 15 or 20 questions of Mr. Gonzalez attempting to determine if he was understanding the proceedings. He was

educated in Mexico, as the record will reflect. He had no U.S. education whatsoever that he indicated. And he used a Spanish to English Google dictionary, apparently, to come up with terminology that he didn't understand to translate.

That being the case, . . . [Article] 35.16[(a)](11) . . . would state that juror that cannot read or write the English language . . . would be disqualified[;] he was not disabled but he's disqualified. He does not qualify.

And based on the fact that this individual sat, listened to the question of the juror . . . who sat next to him and did not speak up at the time that . . . that . . . portion of the panel was questioned, we would think that for that reason he was either intentionally dishonest or just didn't understand enough to be able to say that at that time that he wasn't understanding the proceedings.

So we believe that he was a not qualified juror from the very beginning and he's been seated on this panel and—on this jury and that he is one of 12. He's sitting outside the law; in other words, he should not be on the panel and . . . we proceeded with 11 jurors. And we . . . objected to proceeding with 11 jurors and we continue to object to proceeding with 11 jurors.

And we believe that violates our client's Constitutional rights under the Texas Constitution, Article 5, section 13, and the Texas Code of Criminal Procedure 36.16 (sic), subsection 11. And . . . we are requesting a mistrial at this time.

The trial court denied the motion.

Neither party requested that the jury be polled on its guilty verdicts. Defense counsel requested that the jury be polled on its punishment verdicts. Gonzalez answered "Yes" to the trial court's question, "Raul Gonzalez, are these your verdicts?"

## III. Discussion

### A. The Retention of Gonzalez on the Jury

In his first issue, Appellant contends that the trial court's retaining Gonzalez on the jury violated Appellant's Texas constitutional right to a jury of twelve persons because Gonzalez was not fluent enough in English to understand the proceedings.[2] Appellant argues that this court should overrule *Stillwell v. State*, 466 S.W.3d 908 (Tex. App.—Fort Worth 2015, no pet.); that the trial court should have removed Gonzalez on the ground of disability without the parties' consent; and that his constitutional claim was not forfeited because he did not expressly waive it. The State responds that because Appellant objected in the trial court that Gonzalez was disqualified, not disabled, his complaint on appeal does not comport with his trial objection and is therefore forfeited; that Appellant invited the alleged error by stating in the trial court that he was not complaining that Gonzalez was disabled and that he wanted to proceed with Gonzalez on the jury; and that Appellant forfeited his complaint during voir dire by not sufficiently questioning and challenging Gonzalez about his ability to understand English.

---

[2]In his brief, Appellant contends, contrary to his argument in the trial court, that the trial court should have removed Gonzalez from the jury and proceeded with *eleven* jurors. His argument therefore seems to be that he was deprived of having a jury of eleven jurors who were fluent in English. Nevertheless, we too will refer to the right to a jury of twelve persons.

## 1. Invited Error

Appellant invited any error regarding the trial court's decision to leave Gonzalez on the jury and is therefore estopped from complaining of it on appeal. The invited-error doctrine prevents a party from taking advantage of an error that it invited or caused, even if that error involves an absolute or waivable-only right. *See Deen v. State*, 509 S.W.3d 345, 348 n.6 (Tex. Crim. App. 2017); *Woodall v. State*, 336 S.W.3d 634, 644–46 (Tex. Crim. App. 2011); *Prystash v. State*, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999). *See generally Proenza v. State*, 541 S.W.3d 786, 794 (Tex. Crim. App. 2017) (explaining that what we used to call "fundamental errors" are now violations of category-one (absolute rights) and category-two (waivable-only rights) under the framework provided in *Marin v. State*, 851 S.W.2d 275, 279 (1993)).

In *Jones v. State*, 119 S.W.3d 766 (Tex. Crim. App. 2003), *Lamon v. State*, 463 S.W.3d 655 (Tex. App.—Texarkana 2015, no pet.), and *Stoker v. State*, No. 02-10-00491-CR, 2011 WL 4414605 (Tex. App.—Fort Worth Sept. 22, 2011, pet. ref'd) (per curiam) (mem. op., not designated for publication), the Court of Criminal Appeals, our sister court in Texarkana, and this court, respectively, applied the invited-error doctrine in similar situations involving sworn jurors. Those holdings are instructive in the case before us.

In *Jones*, Jones was arrested for murdering his great-aunt. While he was in jail awaiting trial, he confessed to participating in two other murders. During the guilt–innocence phase of Jones's trial on his great aunt's murder, a juror recognized his

former supervisor in the courtroom and informed the court. The juror's former supervisor was the father of one of the other two people Jones had murdered (although the juror was unaware of those facts). Upon questioning, the juror indicated that he believed that he could be impartial but that "he could not help 'but think a little bit of empathy [would] leak out in . . . favor'" of his former supervisor if he were to learn that the supervisor had suffered some type of loss. *Jones*, 119 S.W.3d at 783–84. Jones moved for mistrial but alternatively requested that the juror be excused. *Id.* at 784. On appeal, Jones complained that the juror should not have been discharged because he was not disabled. *Id.* The Court of Criminal Appeals held,

> [Jones's] argument and authorities are all directed toward his contention that the trial court's discharge of [the juror] was inappropriate under Article 36.29. Although [Jones] argued at times before the trial court that discharge under Article 36.29 would be inappropriate, he nonetheless proposed discharge as an alternative to mistrial at least three times. Because [Jones] requested the discharge as an alternative to mistrial, he is now estopped from complaining about it. [Jones] had the option of contending at trial that mistrial was the sole legal and appropriate remedy, and he could have declined to suggest or support any alternatives. By proposing alternatives he is estopped from complaining on appeal about the judge having accepted one of them. Parties are often faced with difficult choices, but facing a tough dilemma does not create a claim or excuse a party for the option chosen.

*Id.* (footnotes omitted).

In *Lamon*, after the jury was sworn and released for the day, a juror returned to the courtroom and told the judge that he did not believe that he could continue to serve as a juror. The next day, in a hearing, the juror indicated that he could not consider the full range of punishment. Lamon's counsel thanked the juror for his honesty and stated,

12

"I think the Court understands where I am." *Lamon*, 463 S.W.3d at 657. The trial court discharged the juror with no objection, and then announced that it had done so. *Id.* The discussion following the announcement indicated that had the juror been excused during voir dire, there would not have been enough venire members to seat an alternate juror. *Id.* The trial then proceeded with only eleven jurors over Lamon's objection. *Id.*

On appeal, Lamon argued that the juror was not a disabled juror, and therefore the trial court erred by discharging him, depriving Lamon of his constitutional right to a jury of twelve members. *Id.* Our sister court in Texarkana held that Lamon invited the error:

> Lamon essentially prompted the trial court's decision. If one looks at the words Lamon uttered when that issue was raised and examines the posture in which he found himself, it is more likely that Lamon encouraged the trial court to discharge the juror rather than his trying to dissuade the discharge of the juror. After exploring the juror's bias, counsel for Lamon stated, "I think the Court understands where I am." Given the juror's comments, which clearly indicated bias against Lamon, counsel's statement can fairly be interpreted to mean that he did not want this juror on this case, thus prompting the trial court to discharge the juror. Following immediately on the heels of defense counsel's remark, the trial court released the juror from service. It is reasonable to conclude that defense counsel's comment was an implicit request that the juror be discharged.
>
> . . . .
>
> Here, because Lamon implicitly requested the juror's discharge, we find that he is estopped from complaining about the propriety of the trial court's decision on appeal.

*Id.* at 658–59 (citations omitted).

13

In *Stoker*, on the third day of trial, a juror told the trial court that he could no longer sit on the jury because he was losing too much income and because he had trouble understanding the testimony due to his inability to understand English. Defense counsel informed the court that Stoker wanted the juror excluded and wanted to proceed with eleven jurors, and the parties signed a written document memorializing the agreement. *Stoker*, 2011 WL 4414605, at *1. On appeal, Stoker argued that the trial court erred by excluding the juror because he was not disabled. *Id.* This court held that Stoker was estopped from complaining about the juror's discharge. *Id.* at *2.

In the case at bar, Appellant argued to the trial court that Gonzalez was disqualified, not disabled, and Appellant wanted a mistrial. The trial court made clear that it was not going to grant a mistrial but was going to proceed with the trial with or without Gonzalez. Given the choice to proceed with eleven jurors or to proceed with Gonzalez on the jury, Appellant chose to leave Gonzalez on the jury. Like Jones, Lamon, and Stoker, Appellant is stuck with his choice. *See Jones*, 119 S.W.3d at 784; *Lamon*, 463 S.W.3d at 659; *Stoker* 2011 WL 4414605, at *2. We hold that Appellant invited error, if any, regarding Gonzalez's presence on the jury and is estopped from complaining of Gonzalez's presence on the jury on appeal.

### 2. Forfeited Complaint

#### a. *Stillwell* and *Vera*

Even if Appellant had not invited error, if any, arising from Gonzalez's remaining on the jury, Appellant would not be entitled to relief. Although the Texas Constitution

14

requires juries in felony cases to have twelve members, it also allows the remainder of the jury to render a verdict if up to three jurors die or become disabled. Tex. Const. art. V, § 13. The provision further allows the Texas Legislature to "change or modify the rule authorizing less than the whole number of the jury to render a verdict." *Id.* The Legislature has provided two instances (other than a juror's dying) in which a trial can proceed with less than twelve jurors: (1) Section 62.201 of the Government Code allows the parties to agree to try their case with less than twelve jurors, Tex. Gov't Code Ann. § 62.201, and (2) Code of Criminal Procedure Article 36.29(a) allows the trial judge in a noncapital case to remove a juror who "becomes disabled from sitting" after a felony trial begins but before the charge is read to the jury, affording the remainder of the jury the power to render a verdict, Tex. Code Crim. Proc. Ann. art. 36.29(a). *Hill v. State*, 90 S.W.3d 308, 314 (Tex. Crim. App. 2002). A juror is disabled from sitting when a "physical illness, mental condition, or emotional state . . . hinders [the juror's] ability to perform [the] duties" of a juror or when "any condition . . . inhibits the juror from fully and fairly performing the functions of a juror." *Ramos v. State*, 934 S.W.2d 358, 369 (Tex. Crim. App. 1996) (citations omitted); *see Stillwell*, 466 S.W.3d at 911 n.1.

In *Stillwell*, which controls the merits of this case, this court held that a juror's inability to understand English is not a disabling condition. 466 S.W.3d at 912. Instead, relying on *Montoya v. State*, 810 S.W.2d 160, 170 (Tex. Crim. App. 1989), this court held that an inability to understand English is included within the ground for a challenge for cause alleging that the venire member cannot read or write. *Stillwell*, 466 S.W.3d at 912;

15

*see* Tex. Code Crim. Proc. Ann. art. 35.16(a)(11). That ground is not one of the three grounds that the Texas Legislature has designated an absolute disqualification. *See* Tex. Code Crim. Proc. Ann. arts. 35.16(a)(2)–(4), 35.19; *Stillwell*, 466 S.W.3d at 912. That is, the inability to understand, read, or write English is not one of the three grounds for a challenge for cause that can result in the reversal of a conviction even if not raised during voir dire. *See Stillwell*, 466 S.W.3d at 912; *cf.* Tex. Code Crim. Proc Ann. art. 44.46. Instead, a venire member's inability to understand, read, or write English and all the other non-absolute disqualification grounds listed in Article 35.16 for challenges for cause are forfeited if not raised during voir dire. Tex. Code Crim. Proc. Ann. art. 35.16; *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007); *Stillwell*, 466 S.W.3d at 913. Because the juror in *Stillwell* was not challenged for cause, Stillwell forfeited the right to complain about the juror's presence on the jury. *Stillwell*, 466 S.W.3d at 913. Thus, when the juror showed an inability to understand English during the trial, the *Stillwell* trial court's options were (1) to leave the juror on the jury, (2) to remove him and declare a mistrial, or (3) to remove him, obtain the parties' consent to continuing the trial with eleven jurors, and then finish the trial with eleven jurors. *Id.* The trial court could not both remove the juror and continue the trial with eleven jurors absent Stillwell's consent. *Id.* Stillwell did not consent to being tried by only eleven jurors, so after the trial court removed the juror, the trial court was required to grant a mistrial. *Id.* Because the trial court denied the mistrial and proceeded with eleven jurors without Stillwell's consent, we held that the trial court reversibly erred. *Id.*

16

Our sister court in San Antonio relied on *Stillwell* in *Vera v. State*, a case in the same procedural posture as Appellant's. 496 S.W.3d 293 (Tex. App.—San Antonio 2016, pet. ref'd). In *Vera*, the parties did not ask the venire members during voir dire how well they understood English. *Id.* at 294. After the jury was sworn but before opening statements, a juror told the trial court, "I have a problem, because I don't know—I no speak good English." *Id.* The trial court asked the juror if he was a citizen, and the juror responded that he was a citizen and could "talk like just [he did not] understand easily everything." *Id.* The trial court left the juror on the jury and denied Vera's resultant motion for mistrial. *Id.* at 294–95. On appeal, Vera contended that he was effectively tried by a jury of eleven persons due to the language deficiency of the juror and that his motion for mistrial preserved the error. *Id.* at 295. Our sister court held that Vera forfeited the right to challenge the juror's inability to understand English by not asking "specific enough questions to determine whether anyone on the venire panel had difficulty . . . understanding English" during voir dire and by not challenging the juror. *Id.* at 295–96.

Following *Stillwell* and *Vera*, we hold that Appellant forfeited the right to complain of Gonzalez's presence on the jury on the basis of his inability to understand English by not questioning the venire panel about their ability to understand English and by not raising a timely challenge for cause to Gonzalez during voir dire. *See id.*; *Stillwell*, 466 S.W.3d at 913. The trial court therefore properly did not remove Gonzalez from the jury.

17

### b. Appellant's Arguments for Overruling *Stillwell*

In three main arguments, Appellant contends that *Stillwell* was wrongly decided, relying on the concurring opinion in *Vera* and policy arguments. *First*, Appellant argues that *Montoya*, on which *Stillwell* relies for the proposition that not understanding English is included within the statutory disqualification ground regarding an inability to read or write, is distinguishable on its facts. In making the argument, Appellant relies on the concurring opinion in *Vera*. 496 S.W.3d at 298 n.2 (Chapa, J., concurring).

The concurring opinion in *Vera* states that "the *Montoya* court held a trial court *does not err* by excluding a juror who is unable to comprehend English because the juror cannot read and write in English and is excludable under article 35.16" and that *Montoya* "does not treat English comprehension and English literacy the same for waiver purposes." *Id.* We respectfully disagree with the *Vera* concurrence's reading of *Montoya*.

In *Montoya*, the trial court sua sponte excused a venire member over Montoya's objection because the venire member could not understand English. 810 S.W.2d 169. Stating that "[t]he record clearly demonstrate[d] that [the venire member] had trouble understanding English and thus was excludable under Art. 35.16(a)(11)," the Texas Court of Criminal Appeals held that the trial court erred by sua sponte excusing the venire member, who was disqualified under Code of Criminal Procedure Article 35.16(a)(11). *Id.* at 170; *see also Goodman v. State*, 701 S.W.2d 850, 854–56 (Tex. Crim. App. 1985) (holding same for venire member whom trial judge sua sponte excused under Article 35.16(a)(11)—despite evidence of venire member's ability to read and

write in English—because of trial judge's concern that juror's understanding of English was insufficient for a death-penalty case). While forfeiture or waiver was not the issue in *Montoya*, our reading of both *Montoya* and *Goodman* is that the Texas Court of Criminal Appeals *did* equate literacy with comprehension in holding that the venire members were disqualified under Article 35.16(a)(11) and did hold that the trial court erred by sua sponte excluding them. Given that (1) *Montoya* says that an inability to understand English falls under Article 35.16(a)(11); (2) Article 35.16 provides that parties forfeit challenges for cause to non-absolute disqualifications; and (3) *Webb* supports that proposition, it is no leap to hold (as this court did in *Stillwell*) that a challenge to a juror on the basis of an inability to understand English must be made in voir dire or it is forfeited. W*ebb*, 232 S.W.3d at 112; *Stillwell*, 466 S.W.3d at 913.

Appellant contends that *Montoya* is distinguishable because its excluded venire member was never empaneled, whereas Gonzalez sat on the jury here. We fail to see how *Montoya*'s different procedural posture affects the principle that the *Stillwell* and *Vera* jurors, the excluded venire member in *Montoya*, and Gonzalez in this case all could have been questioned about their English comprehension and potentially challenged for cause and excluded during voir dire on the basis of an inability to understand English.

*Second*, Appellant contends that the *Vera* concurrence correctly posits that the constitutional right to a jury of twelve members fluent in English is a waivable-only right that a party may not forfeit by inaction. *Vera*, 496 S.W.3d at 296–97. The

19

concurrence relies on two cases decided more than one hundred years ago, *Sullenger v. State*, 182 S.W. 1140 (Tex. Crim. App. 1916), and *Lyles v. State*, 41 Tex. 172 (1874), to contend that a juror's inability to understand English does not fall within Article 35.16(a)(11) and that such a juror's presence on the jury violates a defendant's constitutional rights to a jury trial and to a jury of twelve persons. *See* Tex. Const. art. I, § 15; *id.* art. V, § 13. In *Lyles*, the jury contained nine members who did not understand English despite the defendant's moving during voir dire that no juror be chosen who did not understand English and his objecting to the denial of his motion. 41 Tex. at 176. The Texas Supreme Court[3] held that the constitutional right to a jury trial requires that jurors unable to understand English be excluded from the panel. *Id.* at 177. In *Sullenger*, the defendant objected to a venire member who could read, write, and understand only a little English, but the trial court overruled the objections and the venire member was chosen for the jury. 182 S.W. at 1142. The Court of Criminal Appeals summarily reversed, relying in part on *Lyles. Id.*

Timely objections in those cases (absent from the case before us) preserved error, but the *Vera* concurrence contends that the right to a jury composed of twelve people fluent in English is a waivable-only right. 496 S.W.3d at 297. The concurrence relies on

---

[3]Before the Texas Constitution of 1876 created the Court of Appeals with exclusive criminal jurisdiction, the Supreme Court of Texas had both civil and criminal jurisdiction. Tex. Const. art. V, § 3, interp. commentary; *see also* Hon. James T. "Jim" Worthen, *The Organizational & Structural Development of Intermediate Appellate Courts in Texas, 1892–2003*, 46 S. Tex. L. Rev. 33, 34 (2004).

20

the statutory requirement that a defendant waive the right to a jury "in writing in open court," the statutory provision that "the parties may agree" to a jury of less than twelve members, and intermediate appellate courts' requiring an express waiver to juries made up of fewer than twelve people. *Id.* (citing Tex. Code Crim. Proc. Ann. art. 1.13; Tex. Gov't Code Ann. § 62.201; *Bates v. State*, 843 S.W.2d 101, 104 (Tex. App.—Texarkana 1992, no pet.); *Trinidad v. State*, 275 S.W.3d 52, 58 (Tex. App.—San Antonio 2008), *rev'd on other grounds*, 312 S.W.3d 23, 28 (Tex. Crim. App. 2010)).

Even if the *Vera* concurrence is correct that a defendant must affirmatively waive a jury of twelve and cannot otherwise forfeit that right,[4] that proposition does not help Appellant. The concurrence concedes that a defendant expressly waives the constitutional issue by "affirmatively consenting" to "proceeding with a juror" with an alleged inability to "understand English or to proceeding with fewer than twelve jurors" with the State's agreement. 496 S.W.3d at 299. Here, the State wanted to proceed with the trial whether Gonzalez remained on the jury or the trial court removed him. Appellant wanted a mistrial, but he affirmatively consented to Gonzalez's remaining on

---

[4]In Article Five, Section Thirteen, the Texas Constitution provides that felony juries shall be composed of twelve persons unless up to three of them die or become disabled. Tex. Const. art. V, § 13. In *Trinidad*, the Texas Court of Criminal Appeals bypassed the issue of whether that constitutional provision is a waiver-only provision. 312 S.W.3d at 28. A waiver-only provision is one that must be expressly waived in the trial court before a party may lose it; it cannot be forfeited or lost by procedural default. *Marin*, 851 S.W.2d at 279. This issue is currently pending before that court in *Becera v. State*, No. PD-0804-19 (Tex. Crim. App. submitted Apr. 8, 2020).

the jury instead of proceeding to trial without him. Thus, even the *Vera* concurrence would conclude that Appellant expressly waived his constitutional issue regarding Gonzalez's remaining on the jury.

Further, the record before us, like the record in *Vera*, does not clearly demonstrate that Gonzalez did not have sufficient understanding of English to serve as a juror. *See id.* The trial court received conflicting evidence about Gonzalez's English fluency. Even though Gonzalez had to use a Google dictionary to translate words he did not understand—*rehabilitation*, *deterrence*, *punishment*, *racial prejudice*, and *unlawful*—he filled out his juror questionnaire in English himself. Even though Gonzalez stated that he understood only part of the concept of *reasonable doubt* that was discussed in voir dire, the record does not explain his level of understanding. And even though Gonzalez stated that he did not understand some of the first day's testimony, he could not point to any examples when pressed by the trial judge. Gonzalez did not tell the bailiff that he had a problem understanding English until he realized that the trial was going to last more than one day, he conversed with the trial judge and both attorneys during the hearing without indicating that he did not understand what they were saying, and he affirmed that the assessed punishments were his verdicts when polled. Consequently, even if Appellant's constitutional right to a jury of twelve members included a waivable-only right to a jury of twelve members who understood English, we would hold that the trial court did not abuse its discretion by retaining Gonzalez on the jury and

therefore did not violate Appellant's constitutional right to a jury of twelve persons. *See id.* We would therefore have no need to overturn *Stillwell* on these facts.

*Third*, Appellant raises constitutionally based policy arguments to support his contention that cases like *Stillwell* that interpret Code of Criminal Procedure Article 35.16(a)(11) to include an English fluency requirement are constitutionally suspect because they infringe on the equal protection and due process rights of non-English speakers by allowing their exclusion from juries. Without conceding his point (which was not preserved in the trial court) we note that interpreting the Texas Constitution and Code of Criminal Procedure Article 36.29 to allow trial courts to remove such jurors as disabled, which is the outcome Appellant seeks, is no less constitutionally suspect. We decline to overturn *Stillwell* or to ignore the plain language of *Montoya*; we leave it to the Texas Legislature or the Texas Court of Criminal Appeals to effect any change in the existing law.

### 3. Resolution of First Issue

Appellant is estopped from complaining about any error, waivable-only or not, regarding Gonzalez's sitting on the jury because he affirmatively and expressly chose to leave Gonzalez on the jury. But even were we to review the merits of Appellant's argument, we would hold under *Stillwell* and *Vera* that he forfeited any right to complain about Gonzalez's presence on the jury by not questioning him about his English fluency in voir dire and challenging him thereon.

23

Appellant arguments do not convince us to disavow *Stillwell*. Even if the law were as posited by the *Vera* concurring opinion, Appellant would be unable to show that his constitutional right to a jury of twelve persons was violated or that the trial court erred by retaining Gonzalez on the jury, and we reject Appellant's argument that *Stillwell* suffers from constitutional infirmities when the legal interpretation Appellant advances suffers from those same alleged infirmities. We overrule Appellant's first issue.

## B. Ineffective Assistance of Counsel

In his second issue, Appellant contends that defense counsel rendered ineffective assistance by failing to diligently inquire in voir dire whether all venire members were fluent in English, resulting in an empaneled juror who was not fluent in English. The State responds that the record is insufficient for determining ineffective assistance because the motion for new trial did not raise the issue and there was no hearing on the motion. Alternatively, the State contends that the record does not satisfy either *Strickland* prong.

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel. *Ex parte Scott*, 541 S.W.3d 104, 114 (Tex. Crim. App. 2017); *see* U.S. Const. amend. VI. To establish ineffective assistance, an appellant must prove by a preponderance of the evidence that his counsel's representation was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013); *Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999). The record must

24

affirmatively demonstrate that the claim has merit. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

In evaluating counsel's effectiveness under the deficient-performance prong, we review the totality of the representation and the particular circumstances of the case to determine whether counsel provided reasonable assistance under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065; *Nava*, 415 S.W.3d at 307; *Thompson*, 9 S.W.3d at 813–14. Our review of counsel's representation is highly deferential, and we indulge a strong presumption that counsel's conduct was not deficient. *Nava*, 415 S.W.3d at 307–08.

An appellate court may not infer ineffective assistance simply from an unclear record or a record that does not show why counsel failed to do something. *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012); *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007). Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593. If trial counsel did not have that opportunity, we should not conclude that counsel performed deficiently unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Nava*, 415 S.W.3d at 308. Direct appeal is usually inadequate for raising an ineffective-assistance-of-counsel claim because the record generally does not show counsel's reasons for any alleged deficient performance. *See Menefield*, 363 S.W.3d at 592–93; *Thompson*, 9 S.W.3d at 813– 14.

*Strickland*'s prejudice prong requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial—that is, a trial with a reliable result. 466 U.S. at 687, 104 S. Ct. at 2064.

Attorneys have a duty to diligently voir dire venire members. "It is incumbent upon counsel to specifically ask questions which will determine whether they have a right to challenge the venire[]member." *Webb*, 232 S.W.3d at 113. Attorneys have a "duty to determine [the] capability or fitness of [prospective] jurors during voir dire." *Stillwell*, 466 S.W.3d at 913. The record before us does not reveal why defense counsel did not diligently question the venire members about their English fluency and, if the evidence warranted, thereafter challenge Gonzalez for cause. However, as established in our discussion of Appellant's first issue, the record is also inadequate to show that Gonzalez was not sufficiently fluent in English to serve on the jury. Appellant chose not to raise ineffective assistance in his motion for new trial and chose not to have a hearing on the issue in the trial court. We will not infer that defense counsel's performance was defective from an inadequate record. *See Menefield*, 363 S.W.3d at 593; *Nava*, 415 S.W.3d at 308.

We will also not infer that defense counsel's failure to voir dire on the jury's English fluency and failure to challenge Gonzalez for cause deprived Appellant of a fair trial. Appellant concedes that any error likely would have prejudiced only the sentencing phase because the evidence of guilt was overwhelming. He argues that Gonzalez would not have understood sudden-passion evidence or the punishment jury charge, which

26

charged the jury on the hate-crime, sudden-passion, and sentencing issues. However, even if defense counsel's performance had been deficient, the record does not support Appellant's conjecture about the effects of defense counsel's performance on his sentencing. Appellant chose not to develop the record to support his ineffective assistance claim. Absent evidence in the record, Appellant cannot satisfy his burden to show that defense counsel's performance was deficient or, even if it was, that it deprived Appellant of a fair trial. We overrule Appellant's second issue.

## IV. Conclusion

Having overruled Appellant's two issues, we affirm the trial court's judgments.

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: September 24, 2020

27